**Francine KLINGMAN, Plaintiff,**

v.

**Melvin E. LEVINSON, Defendant.**

**Nos. 86 C 3205, 82 B 5309 and 82 A 2297.**

United States District Court, N.D. Illinois, E.D.

Oct. 28, 1986.

Lionel I. Brazen, Manuel Rosenstein, Chicago, Ill., for plaintiff.

Melvin E. Levinson, Wilmette, Ill., for defendant.

## ORDER

BUA, District Judge.

This order concerns defendant's appeal from an adverse ruling in the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, 58 B.R. 831, pursuant to 28 U.S.C. § 158(a). For the reasons stated herein, the judgment of the Bankruptcy Court is affirmed.

## I. FACTS

Plaintiff, Francine Klingman ("Klingman") and defendant, Melvin E. Levinson ("Levinson") entered into a trust agreement on July 19, 1967 in which Levinson, an attorney, was named trustee. Pursuant to the trust agreement, Klingman delivered to Levinson certain assets having a value of $37,550 which Levinson was to invest to earn income for the benefit of Klingman. Dispute arose over an apparent dissipation of the trust assets, and Klingman filed suit against Levinson in the Circuit Court of Cook County on March 11, 1970. The action was resolved by an agreement among the parties to certain stipulations and findings embodied in a consent judgment pursuant to which Levinson was to refund the $37,550 plus interest and pay $10,000 in attorneys' fees to Klingman. According to the stipulations in the April 11, 1975 consent judgment, the parties agreed:

4. That Defendant [Levinson], in disregard of his fiduciary duties and obligations as Trustee, has failed to retain and conserve the said trust corpus and income therefrom, but rather, in violation of and disregard of his fiduciary duties and obligations as Trustee, has, through his misappropriation and defalcation, allowed or caused the dissipation and loss of the trust corpus and income therefrom.

\* \* \* \* \* \*

6. That malice is the gist of this action, and that the Defendant has stipulated that it is his intention that the obligation to Plaintiff created by this Agreed Judgment Order not be dischargeable in any bankruptcy or similar proceeding, and that in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof.

On April 22, 1982, Levinson filed a Petition in Bankruptcy. Klingman responded on June 22, 1982, by instituting an Adversary Proceeding claiming her debt-judgment was not nondischargeable in bankruptcy because it was based on fraud on defalcation by Levinson while he acted in a fiduciary capacity. 11 U.S.C. § 523(a)(4). Levinson filed an answer to Klingman's claim and asserted two counterclaims.

On May 29, 1985, U.S. Bankruptcy Judge Thomas James entered an order dismissing Levinson's counterclaims. The case was then transferred to U.S. Bankruptcy Judge Robert Ginsberg and on March 18, 1986, he granted Klingman's motion for summary judgment on the issue of nondischargeability. Judge Ginsberg ruled that the judgment-debt could not be discharged in bankruptcy because it was resulted from fiduciary fraud or defalcation. Citing the text of the April 11, 1975 consent judgment, Judge Ginsberg noted that Levinson had stipulated to the express finding that he violated his fiduciary duties by misappropriating and defalcating the assets of the trust. As such, the judge ruled that Levinson was barred from relitigating the issue of fiduciary fraud or defalcation under principles of collateral estoppel and

held the debt-judgment nondischargeable under 11 U.S.C. § 523(a)(4). Judge Ginsberg went on to hold that the portion of the debt-judgment attributable to $10,000 in legal fees was also nondischargeable on the grounds that the award was ancillary to the primary debt and thus took on the status of the primary debt for purposes of determining nondischargeability. Levinson filed notice to appeal Judge Ginsberg's March 18, 1986 ruling within the ten-day period prescribed in Bankruptcy Rules 8001 and 8002. Levinson, however, seeks reversal of both the order granting summary judgment to Klingman and the order dismissing his two counterclaims.[1]

## II. DISCUSSION

Levinson argues that Judge Ginsberg erred in granting Klingman's motion for summary judgment on collateral estoppel grounds. Levinson asserts that under the teaching of *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), a bankruptcy judge deciding an issue of nondischargeability must conduct an independent hearing to determine whether the disputed debt was the product of the debtor's fraud, misappropriation, or defalcation while acting in a fiduciary capacity. Because the bankruptcy judge precluded Levinson from offering evidence to contradict the stipulations and findings agreed upon in the consent judgment, he contends the principles of *Brown* were violated and the order must be reversed for a proper hearing on the issue of fraud and defalcation.

In *Brown*, the Supreme Court addressed the issue of whether res judicata precluded a creditor from proving the underlying nature of a debt arising from a consent judgment in a subsequent bankruptcy proceeding. The creditor in *Brown* brought a collection suit in state court against the debtor to recover amounts due under a loan guarantee agreement. *Id.* at 128, 99 S.Ct. at 2207. The suit was subsequently settled and a consent judgment was entered in

accord with the parties' stipulations. *Id.* Neither the parties' stipulations nor the resulting judgment indicated the legal basis upon which the debtor's liability was based. *Id.* The debtor then filed a petition for voluntary bankruptcy and the creditor objected claiming the debt-judgment was nondischargeable under 11 U.S.C. § 523. *Id.* The debtor responded arguing res judicata barred the creditor from relitigating the issue of whether the debt was the product of some fraud or defalcation since the creditor had an opportunity to include such a finding in the parties' settlement stipulations and consent judgment. *Id.* at 129, 137, 99 S.Ct. at 2208, 2212.

Responding to the debtor's argument, the Court reasoned that the creditor was not asserting a new basis for recovery or attacking the validity of the prior judgment, but rather attempting to meet the debtor's new defense of bankruptcy. *Id.* at 133, 99 S.Ct. at 2210. The Court further noted that the statutory policy in favor of resolving dischargeability questions in bankruptcy court would be undercut by limiting the bankruptcy court's inquiry to only those facts contained in the state court's record when the parties had little incentive to litigate issues of fraud or malice. *Id.* at 135. In ruling that res judicata did not preclude the creditor from offering evidence that the debt-judgment was the product of debtor's fraud and defalcation, the Court expressly left open the issue of whether collateral estoppel could operate to preclude relitigation of 11 U.S.C. § 523 issues. The Court stated:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas, res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. [Citations omitted.] If in the course of adjudicating a state law question, a state court should determine fac-

---

1. Because Levinson did not indicate his intention to appeal the May 29, 1985 ruling in his notice of appeal, this Court is without jurisdiction to review that order under Bankruptcy Rules 8001 and 8002.

tual issues using standards identical to those of [§ 523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in bankruptcy court.

*Id.* at 139 n. 10, 99 S.Ct. at 2213 n. 10.

■ Applying *Brown* to the case at hand does not, as Levinson asserts, require an automatic reversal of the summary judgment order as Judge Ginsberg based his ruling on principles of collateral estoppel. Thus, the issue this Court must determine is whether collateral estoppel precludes Levinson from asserting the debt-judgment was not the product of fraud or defalcation. Four showings are necessary for the invocation of collateral estoppel: (1) the issue to be concluded must be identical to that involved in the prior action; (2) the issue must have been actually litigated in the prior action; (3) resolution of the issue must have been essential to final judgment in the prior action; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Ray v. Indiana & Michigan Elec. Co.,* 758 F.2d 1148, 1150 (7th Cir.1985).

Addressing the first factor, the state court specifically concluded Levinson caused the loss of the trust assets by fraud or defalcation while acting as a fiduciary. Under 11 U.S.C. 523(a)(4), three elements must be shown to determine whether a debt is nondischargeable: (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created. Since the stipulations and findings embodied in the state court consent judgment addressed each of these elements, the issues to be determined in the bankruptcy proceeding were identical to those involved in the prior action.

■ Collateral estoppel may be predicated on a consent judgment when the record of the prior proceeding shows that the parties intended the judgment to preclude relitigation of the issue in question. *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 538–39 (5th Cir.1978); *Universal City Stu-*

*dios v. Nintendo Co.,* 578 F.Supp. 911, 920 (S.D.N.Y.1983); *In re Austin,* 26 B.R. 753, 754–55 (Bkrtcy.S.D.Fla.1983). Whereas here, a party stipulates in a consent judgment to the resolution of a claim against him and the specific reasons for such resolution, the matter will be deemed as "actually litigated" under collateral estoppel principles. The consent judgment agreed to by Levinson contains the following stipulation:

That malice is the gist of this action, and that the Defendant has stipulated that it is his intention that the obligation to Plaintiff created by this Agreed Judgment Order not be dischargeable in any bankruptcy or similar proceeding and that in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof.

The foregoing stipulation unequivocally shows the parties' intention that the judgment preclude relitigation of the issue Levinson attempted to raise before the bankruptcy court.

■ The third and fourth showings necessary for the invocation of collateral estoppel are also present in the case at bar. Little doubt exists that Levinson, an experienced attorney, was capable of protecting his interests in the prior action. Judging from the quality of briefs drafted by Levinson in the present action, this Court is convinced that even if Levinson was forced for financial reasons to appear *pro se* in the prior state court proceedings, he was afforded a full and fair chance to address the issue he seeks to dispute. Finally, the determination in the first proceeding that Levinson committed acts of misappropriation and defalcation while acting in a fiduciary capacity was sufficiently necessary to the entry of judgment against Levinson to preclude relitigation of that issue. The collateral estoppel requirement that a finding be necessary to a judgment does not mean the finding must be so crucial that without it, the judgment could not stand. *Mothers Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1571 (D.C.Cir.1983). Rath-

er, the purpose of the requirement is to prevent incidental determination of a non-essential issue from precluding reconsideration of that issue in later proceedings. *Id.* Although the determination that Levinson committed acts of misappropriation and defalcation while serving in a fiduciary role may not have been the sole grounds for the entry of judgment against him, these stipulated findings provided the primary basis for Levinson's liability to Klingman. Levinson's stipulation that he recognized the judgment would not be dischargeable in bankruptcy precludes any argument that the parties did not foresee the implications of the misappropriation and defalcation findings in the consent judgment. As each of the four collateral estoppel requirements exist, the final question is whether some countervailing statutory policy requires that Levinson be given an opportunity to show his debt to Klingman was not the result of some fraud on defalcation while acting in a fiduciary capacity.

■ The Supreme Court in *Brown*, discussed certain countervailing statutory policies in reaching its determination that the doctrine of res judicata did not apply to questions of dischargeability in subsequent bankruptcy proceedings. After making this determination, the Court stated that collateral estoppel could preclude relitigation of factual issues concerning dischargeability, provided that the court in the prior proceeding used standards identical to 11 U.S.C. § 523 and no countervailing statutory policy dictated a contrary result. *Brown*, 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10.

Although Levinson argues certain countervailing statutory policies cut against the invocation of collateral estoppel in this case, each of these asserted countervailing policies was addressed in *Brown* before the Court concluded the narrower principle of collateral estoppel could preclude relitigation of a § 523 issue. Because collateral estoppel treats as final only those issues actually and necessarily decided in the prior action as opposed to all issues that might have been litigated, the countervail-

ing statutory policies discussed in *Brown* are not irreconcilable with the application of collateral estoppel. For the Supreme Court's discussion of collateral estoppel to have any practical effect, Levinson must articulate countervailing policies other than those discussed in *Brown* to preclude the invocation of collateral estoppel. As Levinson has not done so, this Court rules the bankruptcy court did not err in precluding Levinson from relitigating the issue of fraud and defalcation under 11 U.S.C. § 523(a)(4). In light of the stipulations and findings in the consent judgment, no material issues of fact remained, and summary judgment in favor of Klingman on the issue of nondischargeability was properly granted.

Finally, Levinson attacks the bankruptcy court's determination that the legal fees awarded in the consent judgment were nondischargeable under 11 U.S.C. § 523. Levinson argues that in the absence of a statute permitting the award of attorneys' fees, an Illinois court is without jurisdiction to tax legal fees as costs. Here, Levinson contends that the bankruptcy court wrongly concluded that Ill.Rev.Stat. ch. 110 § 5–108 provided the state court with the authority to grant attorneys' fees to Klingman and thus erred in ruling that portion of the consent judgment was nondischargeable.

■ Although Levinson may be correct in asserting Ill.Rev.Stat. ch. 110 § 5–108 did not provide the state court with authority to grant attorneys' fees, Levinson overlooks the fact he stipulated to the award of legal fees. In Illinois, awards of attorneys' fees are permissible if an agreement or stipulation of the parties specifically authorize such an allowance. *O'Hare v. Moniak*, 110 Ill.App.2d 327, 249 N.E.2d 178, 179 (1969). As Levinson stipulated to the award of legal fees, the state court had the authority to make the allowance part of the consent judgment. In reaching the determination that the award of legal fees was nondischargeable, the bankruptcy court reasoned that certain ancillary obligations such as attorneys' fees and interest

may attach to the underlying debt so as to make their status under § 523 dependent on that of the primary debt. *See In re Hunter*, 771 F.2d 1126, 1131 (8th Cir.1985). Since the primary debt in this case was found to be nondischargeable and the grant of attorneys' fees to be ancillary to that debt, the bankruptcy court properly concluded the award of attorneys' fees was nondischargeable under § 523.

### III. CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court are hereby affirmed.

IT IS SO ORDERED.