Douglas HUGHES, Plaintiff-Appellant,

v.

SANTA FE INTERNATIONAL CORP.,
et al., Defendants-Appellees.

No. 87–2924.

United States Court of Appeals,
Fifth Circuit.

June 17, 1988.

Theodore Goller, Shelton & Goller, Houston, Tex., for plaintiff-appellant.

Hubert Oxford, III, Mary Ellen Blade, Beckenstein, Oxford, Radford & Johnson, Beaumont, Tex., Royston, Rayzor, Vickery & Williams, Houston, Tex., for Brown & Root.

W. Robbins Brice, Houston, Tex., for Santa Fe. Intern. Corp.

Before REAVLEY, GARWOOD and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

Douglas Hughes was injured on a barge previously owned by Santa Fe International Corporation ("Santa Fe") and brought this action asserting claims based on negligence and strict liability. The district court granted Santa Fe's motion for summary judgment, holding that, on collateral estoppel grounds, Hughes' claims, based on the defective condition of the barge, were precluded by a jury's failure to find that the barge was unseaworthy in a previous suit. We reverse.

I

On July 15, 1982, Douglas Hughes, an employee of Brown & Root, was injured while working on a pipe-laying barge owned and operated by Brown & Root. Hughes and his wife sued Brown & Root in the United States District Court for the Southern District of Texas, alleging that Brown & Root was negligent and that the barge was not seaworthy. On October 13,

1983, the jury returned a verdict in favor of Hughes for $17,899.50, finding that Brown & Root was negligent and 10% at fault and that Hughes was contributorily negligent and 90% at fault. In addition, the jury failed to find that the barge was unseaworthy and awarded no compensation for Hughes' past and future physical pain and mental anguish.

After the jury verdict was returned, but prior to the entry of judgment, Hughes filed the present action alleging claims based on negligence and strict liability against: Brown & Root; Santa Fe, a prior owner of the barge; and Blohm & Voss, the builder of the barge. Hughes also filed a motion for a new trial in the first suit.

On February 16, 1984, Hughes and Brown & Root entered a settlement agreement (settling the first action) entitled "Release and Satisfaction of Judgment." The parties had previously agreed to settle Hughes' claim for medical expenses in an amount equivalent to that amount payable under the Texas Workers' Compensation Act. In addition, under the terms of the settlement agreement, Brown & Root agreed to pay Hughes and his wife a total of $410,000: $160,000 for past and future maintenance and cure; $17,899.50, representing the amount of the jury verdict; and an additional $232,100.50. In return, the Hughes agreed to release Brown & Root from any present or future claims and to indemnify Brown & Root

> from any and all liability of any sort ... arising out of the accident or injury to DOUGLAS HARDY HUGHES which forms the basis of this lawsuit and the lawsuit entitled *DOUGLAS HARDY HUGHES v. SANTA FE INTERNATIONAL CORP., BLOHM & VOSS A.G. AND BROWN & ROOT, INC.* [the present action] ... even though such claims ... may have been caused, occasioned or contributed to by the negligence or on the basis of *unseaworthiness or strict product liability* of [Brown & Root]. (emphasis added)

The Hughes also agreed to withdraw their motion for a new trial, forego an appeal, and dismiss Brown & Root from the present action.

The settlement agreement specified that the Hughes would receive $232,100.50 upon execution and $177,899.50 pursuant to the entry of judgment by the district court. The judgment, filed on February 16, 1984 with the settlement agreement, recited the jury verdict and awarded the Hughes $17,899.50 pursuant to that verdict and $160,000 for maintenance and cure pursuant to the settlement agreement, for a total of $177,899.50.

## II

Pursuant to the settlement agreement, Hughes agreed to dismiss Brown & Root from the present action, and Blohm & Voss was dismissed for lack of personal jurisdiction. Santa Fe, noting that the basis for Hughes' claim was that the barge was defective, moved for summary judgment contending that Hughes was collaterally estopped from raising this claim because the jury in the prior suit specifically failed to find that the barge was unseaworthy.

In ruling on Santa Fe's motion, the district court first determined whether the defectiveness issue would be given preclusive effect as between Hughes and Brown & Root, and then determined whether Hughes had a "full and fair opportunity to litigate" the issue so as to permit a third party, Santa Fe, to assert a collateral estoppel defense based on the earlier resolution of this issue. With respect to the first inquiry, the court, relying on *International Assoc. of Machinists and AeroSpace Workers v. Nix*, 512 F.2d 125, 132 (5th Cir.1975), noted that there are three requirements:

> First, the issue to be concluded must be identical to that involved in the prior action. Secondly, in the prior action the issue must have been "actually litigated". Lastly, the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

After finding that the defectiveness issue and the unseaworthiness issue were identical and that this issue had been actu-

ally litigated in the earlier action, the court found that this issue was "necessary and essential" to the earlier judgment, despite the fact that the Hughes and Brown & Root entered a settlement agreement in that action. While the court recognized that "consent judgments ordinarily do not support issue preclusion" unless the parties express an intent to be bound by accompanying findings, the court held that the earlier judgment only partially rested on the consent of the parties, as evidenced by the judgment's recitation of the jury verdict. Thus, the court held that

> by the sole force of the jury findings, standing alone and without stipulation or consent of the parties, the court found Douglas Hughes to have prevailed on his negligence claim in the amount of ten percent of his damages as found by the jury. Therefore, it is clear from the face of the judgment itself that the unseaworthiness and negligence claims were "actually litigated", "actually decided" and necessary to the judgment rendered therein.

The court then held that Santa Fe's defensive use of collateral estoppel was proper because Hughes had a full and fair opportunity to litigate the defectiveness issue, and therefore granted Santa Fe's motion for summary judgment.

On appeal, Hughes contends that the defectiveness issue in this suit and the unseaworthiness issue in the prior suit are not identical and that the determination of the unseaworthiness issue in the prior suit was not necessary and essential to the judgment because that judgment rested solely on the consent of the parties, not on the findings contained in the jury verdict. Because we hold that the determination of the unseaworthiness issue was not necessary and essential to the prior judgment and reverse the judgment of the district court on this basis, we do not reach Hughes' first contention.

### III

■ A consent judgment ordinarily does not give rise to issue preclusion because the issues underlying the judgment are nei-ther actually litigated nor necessary and essential to the judgment. *See Avondale Shipyard, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1272–73 (5th Cir.1986); *Kaspar Wire Works, Inc. v. Leco Eng'g and Machine, Inc.*, 575 F.2d 530, 539 (5th Cir. 1978). However, consent judgments will be given preclusive effect if the parties manifest such an intention. *Id.*

■ The settlement agreement demonstrates that Hughes did not intend to be bound by the jury's unseaworthiness finding. The present action was commenced before the settlement agreement was executed, and that agreement specifically reserved to Hughes the right to pursue this action. Moreover, "[t]o further effectuate the intent of [the] Agreement," the Hughes agreed to indemnify Brown & Root from all liability arising out of Hughes' injury "even though such claims ... may have been caused ... by the negligence or on the basis of *unseaworthiness or strict product liability* of [Brown & Root]" (emphasis added). This provision clearly contemplates the viability of a future claim based on vessel unseaworthiness or strict product liability, and thus indicates Hughes' intention *not* to be bound by the jury's failure to find that the barge was unseaworthy. Therefore, this finding should not be given preclusive effect if the judgment of the district court in the prior action rested on the consent of the parties rather than on the jury's findings.

The district court in this case only examined the judgment entered in the prior case in making its determination that the prior judgment rested solely on the jury's findings. This determination was primarily based on the fact that the prior judgment recited the jury's findings and, as part of the total damage award ($177,899.50), provided for the award of damages ($17,-899.50) as assessed by the jury.

We believe the judgment and settlement must be considered together. When taken together, they clearly indicate that the entire resolution was based on the parties' consent, rather than the jury's findings. Both the settlement agreement and judgment were filed on the same day, and the

agreement specifically provided that Hughes would receive $232,100.50 upon execution and $177,899.50 pursuant to the judgment. The court's recognition of the agreement is evidenced not only by its reference to the fact that Hughes' claim for maintenance and cure had been settled and its award of $160,000 pursuant to that settlement, but also by the fact that it failed to rule on the Hughes' motion for a new trial, thus acknowledging that this motion had been withdrawn pursuant to the settlement agreement. Additionally, the Hughes' agreement not to pursue an appeal supports the proposition that the entire judgment rested on consent.

Despite these considerations, Santa Fe argues that Hughes should be bound by the jury's findings because they were recited in the judgment, and cites *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1187–92 (5th Cir.1982), *vacated and remanded,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983), *initial opinion adhered to on remand,* 718 F.2d 725, 728 (5th Cir.1983) (adhering to initial partial dissent), *reh'g en banc ordered,* 718 F.2d 730 (5th Cir.1983) (the parties settled before rehearing en banc), for the proposition that findings of fact, once made, are sufficiently final to permit their use for collateral estoppel purposes. *See Chemetron,* 682 F.2d at 1191–92. *Chemetron* has no precedential force because the original panel action was vacated and remanded by the Supreme Court, and the panel opinion on remand was ordered reheard en banc and was thus vacated. *See Avondale,* 786 F.2d at 1273 n. 11.

Read in conjunction with the settlement agreement, we find that the judgment in the prior case rested entirely on the consent of the parties and thus hold that the jury's failure to find that the barge was unseaworthy was not necessary and essential to the judgment. We therefore hold that the district court incorrectly granted Santa Fe's motion for summary judgment.

REVERSED and REMANDED.